# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TERRELL JAVAR HOLLY, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. PX-18-285 |
| KEVIN RICHARDSON, CO II, THOMAS WILLLIAMS, and AUDREY BROWN, A.O. II, | * * | |
| Defendants | * | |

## AMENDED MEMORANDUM OPINION

Plaintiff Terrell Holly filed this action alleging due process violations related to prison disciplinary proceedings at the Dorsey Run Correctional Facility (DRCF). Pending and ready for review is Defendant Richardson's Motion to Dismiss or, in the Alternative, for Summary Judgment, ECF No. 23, which Plaintiff opposed. ECF No. 25.[1] The Court finds a hearing in these matters unnecessary. *See* Local Rule 105.6. For the following reasons, Defendant's dispositive motion, construed as one for Summary Judgment, is GRANTED.

## I. BACKGROUND

On June 7, 2017, Officer Kevin Richardson issued a notice of inmate rule violation (NOIRV) to Holly arising his failure to follow Richardson's commands. The violation alleged that:

> On June 6, 2017; at approximately 2:15 P.M., I, Officer Richardson and Officer Moore were assigned to count the second floor for the institutional stand up count. Once we entered, I gave the order for the count. I, Officer Richardson ordered the third row to stand up, but they refused. I came to the next bunk and gave a direct order for Terrell Holly #2169934, bunk #35, but he refused as so did the other inmates within the dorm. The unruly inmate's behavior was so bad that it interfered with our duties in counting the dorm. That's when the entire dorm came to the front

---

[1] Service was not effected on Defendants Williams and Brown. However, as explained in this Opinion, claims against them would fail, so the Court will dismiss these Defendants without prejudice.

and sat down on the benches located in the front of the dorm. The entire dorm was ordered to go back to their bunks, but they all refused. I, Officer Richardson had immediately called Unit 6, Sergeant D.A. Johnson to respond with other officers. Inmate Holly was identified by tier roster and bunk location.

ECF No. 1-1 at 1. The NOIRV charged Holly with engaging in a disruptive act (Rule Violation 100), interfering with or resisting the performance of staff duties (Rule Violation 312), disobeying an order (Rule Violation 400), and failing to possess or properly display a required inmate identification badge (Rule Violation 500). *Id.* Richardson signed the NOIRV under penalty of perjury. *Id.*

On July 19, 2017, Hearing Officer Thomas Williams conducted a disciplinary hearing regarding the NOIRV notice. ECF No. 1 at 3. Holly pleaded not guilty to all charges. ECF No. 1-1 at 2. Richardson participated in the hearing via teleconference, and Holly was afforded the opportunity to question him. Holly questioned Richardson regarding the circumstances surrounding Holly's refusal to go to his bunk. *Id.* at 2-3. Holly alleges that Williams "not only coached Ofc. Kevin Richardson through the hearing but used his false testimony and allowed it." ECF No. 1-1 at 3.[2] Holly does not offer any specifics on how Williams "coached" Richardson, nor is any such coaching plausibly inferred from the record.

After the hearing, Williams found Holly guilty of interfering with or resisting the performance of staff duties and disobeying an order, but not guilty of the remaining charges. In his decision, Williams explained that he "weigh[ed] and consider[ed] all evidence," and found "that [Holly] did not report to his assigned bunk during stand-up count when ordered. This is a violation of Rule 312 & 400." ECF No. 1-1 at 2; ECF No. 23-2 at 6-7. As a sanction, Holly was

---

[2] Throughout this memorandum opinion, the Court has modified the some of the capitalization when quoting from Holly's filings to conform with ordinary writing conventions. These capitalization modifications are not otherwise acknowledged, though all other modifications are acknowledged.

2

placed in segregation housing for 30 days and had 20 diminution credits revoked. ECF No. 23-2 at 7. Holly also contends that his transfer to Roxbury Correctional Institution (RCI) was the result of this infraction.[3]

Holly challenges Williams's decision primarily because, in Holly's view, Richardson testified inconsistently when compared with his sworn statement in the NOIRV. Holly complains that although Richardson testified he did not come to Holly's bunk to request that Holly stand for the count, Richardson also stated in the NOIRV that he "did come to [Holly's] bunk and give that order." Holly also highlights that Richardson at the hearing had agreed that Holly was not unruly during the incident, although Richardson in the NOIRV used the term "unruly inmate's behavior." ECF No. 1-1 at 2-3. At bottom, Holly contends that Williams could not rationally conclude Holly had committed the two rule violations because Richardson testified inconsistently with his NOIRV statement. ECF No. 1-1 at 3.

On the day of the hearing (July 19, 2017), Holly filed an appeal with the Warden at DRCF, but avers that he never received a response. ECF No. 1-8 at 1. On July 21, 2017, Holly was transferred to RCI, where he again appealed this ruling with the Warden of that facility. *Id.* On August 19, 2017, Holly filed a grievance with the Inmate Grievance Office (IGO). Holly mailed the grievance to an address on Sudbrook Lane, the address provided in Holly's inmate handbook. *Id.* at 1-2; *see also* ECF No. 1-1 at 14. Holly also sent the Commissioner for the Division of Correction a letter dated September 1, 2017. *See* ECF No. 1-1 at 12 (referencing that letter).

---

[3] Although Holly complains about certain conditions at RCI, the Court notes that none of the named Defendants have any apparent connection to, or control over, RCI. Accordingly, the Court confines this Complaint to the events concerning DRCF. Holly is free to file a separate complaint regarding conditions at RCI.

3

On September 13, 2017, RCI Warden Miller responded in writing to Holly. Miller noted that the Commissioner had referred Holly's letter to Miller for response. As to the substance of Holly's complaint, Miller stated:

> I did review your hearing on August 8, 2017, affirming the guilty finding, but reducing your sanction to a total of 22 days disciplinary segregation, which ended your sanction on August 9, 2017. I never received an appeal from you and on the date that I reviewed your hearing it was August 8, 2017, which was the 20th day from the hearing and the time for filing an appeal is 15 days after receiving the hearing officer's decision. The appeal which you included with your letter was dated July 19, 2017, which I never received; as well you did not transfer to RCI until July 21, 2017.
>
> Based on my review of the officer's report, the hearing record and the information you supplied with your letter, I affirmed the hearing officer's decision and stand on my decision to reduce the sanction imposed from 30 days disciplinary segregation to 22 days.

*Id.* Miller also informed Holly that should Holly wish to pursue an appeal regarding the disciplinary hearing, Holly should direct the appeal to the IGO at an address on Reisterstown Road. *Id.* In addition to sending it to Holly, Miller indicated that a copy of the letter was to be provided to "Inmate Affairs – HQ." *Id.* at 13.

Thereafter, Holly sent the IGO a "correspondence of concern," because he had learned from Warden Miller that Holly had mailed his original grievance appeal to the wrong address. ECF No. 1-4 (referencing this correspondence). IGO Administrative Officer Audrey Brown responded via letter dated October 12, 2017, that she had "conducted a preliminary review of your grievance received September 13, 2017 as an appeal from findings that you were charged with violating inmate rules 312 (interference with staff) and 400 (disobeying an order) after a disciplinary hearing conducted on July 19, 2017." Brown concluded that based on her review, Holly "failed effectively to challenge the sufficiency of the evidence underlying the finding of guilt, or any interpretations of law, or compliance with procedural requirements or constitutional

4

principles of due process, or the sanctions imposed," and thus failed to state a claim upon which administrative relief can and should be granted. ECF No. 1-2 at 1. Brown dismissed Holly's appeal and closed the case.

On October 24, 2017, Holly's August 19 grievance appeal was returned to him from the Sudbrook Lane address as undeliverable. ECF No. 1-8 at 3; ECF No. 1-2 at 3. On October 25, Holly sent a copy of the returned grievance appeal to Patricia Goins-Johnson, Executive Director of Inmate Field Services, along with an explanation that he had initially sent it to the Sudbrook Lane address. ECF No. 1-2 at 2; ECF No. 1-3.

On October 27, 2017, Holly received Brown's October 12 letter informing him that his appeal had been dismissed. That same day, Holly responded to Brown in writing, explaining that Brown had not received Holly's actual grievance appeal but rather had reviewed his "correspondence of concern." ECF No. 1-2 at 2. In a letter dated December 4, 2017, Brown informed Holly that, "having reviewed your letter and the administrative dismissal of your grievance on October 12, 2017, I conclude that you have failed to provide a compelling basis for disturbing that dismissal. The analysis of your complaint and its administrative dismissal were entirely correct. This file remains closed." ECF No. 1-2 at 4. The record does not make clear which of Holly's letters Brown had received and reviewed—Holly's October 25 letter to Goins-Johnson at the IGO or Holly's October 27 letter to Brown. In any event, Holly now brings this action, alleging that these proceedings denied him his rights to Due Process under the Fifth Amendment to the United States Constitution.

## II. STANDARD OF REVIEW

Where, as here, the parties submit evidence beyond the four corners of the Complaint that the Court considers, the Court will treat the motion as one for summary judgment. *See* Fed. R.

Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" means that the nonmoving party must be aware the court may treat the motion as one for summary judgment and "be afforded a reasonable opportunity for discovery" if necessary to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted). To do so, the nonmoving party must file an affidavit or declaration under Rule 56(d) explaining why "for specified reasons, it cannot present facts essential to justify its opposition" without formal discovery, or otherwise put the district court on notice of the reasons why summary judgment is premature. Fed. R. Civ. P. 56(d). *See also Harrods, Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244-45 (4th Cir. 2002).

The Court treats this motion as one for summary judgment. Holly knew from the motion itself that Richardson is pursuing summary judgment. Moreover, Holly has not sought additional discovery under Rule 56(d) or otherwise asked to take formal discovery prior to resolution, and the evidence Richardson has submitted appears to be the complete administrative record concerning Holly's rule violation. Construing the motion as seeking summary judgment is therefore appropriate.

Summary judgment shall be granted if the moving party demonstrates that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must view the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in his favor. *Anderson v. Liberty Lobby, Inc.*, 411 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). The nonmoving party bears the burden of showing

the existence of a genuinely disputed material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

The Court reads Holly's pleadings generously, as he proceeds pro se. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That said, the Court must also fulfill its "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted).

### III. DISCUSSION

#### A. Claims Against Defendant Richardson

Although generally prisoners retain certain due process rights with respect to prison disciplinary proceedings, such rights are more limited than those afforded in a criminal prosecution. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citing *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)). Where an inmate faces the possible loss of diminution credits or other cognizable liberty interest, the inmate is afforded such due process protections as: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing conducted by an impartial decisionmaker; (4) the right to call witnesses and present evidence at the hearing so long as doing so is consistent with institutional safety and similar correctional concerns; (5) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (6) a written decision. *See Wolff*, 418 U.S. at 564-66, 592; *see also Baxter*, 425 U.S. at 322, n.5. The inmate does not maintain the right to confront and cross-examine witnesses or to retain

and be appointed counsel. *See Baxter v. Palmigiano*, 425 U.S. 308, 322 (1976); *Brown v. Braxton*, 373 F.3d 501, 504-05 (4th Cir. 2004).

In determining whether certain proceedings afforded the inmate due process, courts do not review the correctness of a disciplinary hearing officer's findings of fact. *See Kelly v. Cooper,* 502 F. Supp. 1371, 1376 (E.D. Va. 1980). Factual findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious. *See Hill*, 472 U.S. at 456; *see also Baker v. Lyles*, 904 F.2d 925, 933 (4th Cir. 1990). Further, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

Holly argues that his hearing was constitutionally insufficient because Richardson essentially committed perjury either through a falsified NOIRV or in his hearing testimony. ECF No. 1 at 3. At bottom, Holly asks this Court to reassess the hearing officer's factual findings and credibility determinations which this Court cannot do. *See Solano-Moreta v. Stephens*, 536 F. App'x 314, 314 (4th Cir. 2013) ("Because the district court was precluded from making independent credibility assessments or reweighing the evidence against Solano–Moreta, it properly declined Solano–Moreta's invitation to reevaluate his disciplinary hearing on the merits under the guise of ensuring that it rendered him due process."); *see also Hill*, 472 U.S. at 455 ("Ascertaining whether [due process] is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence."); *Richards v. Dretke*, 394 F.3d 291, 295 (5th Cir. 2004) ("Credibility determinations are the province of the hearing officer, however.").

The Court otherwise finds that the proceedings satisfied due process under *Wolff*. Indeed, Holly's claim underscores that he received sufficient process in that he was apprised of the charge

in writing and in advance of the hearing, he was afforded the opportunity to examine Richardson and argue in favor of his claim, and he received a written determination at the hearing's conclusion which he then challenged both administratively and in this Court.

Holly separately contends that the hearing officer, Williams, "coached Ofc. Kevin Richardson through the hearing," ECF No. 1 at 3, an allegation fairly construed as a challenge to Williams' impartiality. However, Holly provides no facts by which this Court could infer such "coaching" took place. Nor does the record before this Court support a plausible inference to this effect. The hearing, although less than ideal from Holly's perspective, satisfied due process.

To the extent that Holly brings a common law tort claim against Richardson based on Richardson's alleged perjury, the Court declines to exercise supplemental jurisdiction over this state law claim. *See* 28 U.S.C. § 1367(c) (stating that a district court "may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction."). Holly also seems to suggest that he wishes Richardson to be criminally prosecuted for perjury. Because Holly, as "a private citizen[,] lacks a judicially cognizable interest in the prosecution or nonprosecution of another," the Court cannot afford Holly such relief. *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). Summary judgment as to Richardson is GRANTED.

**B.     Remaining Defendants Williams & Brown**

Neither Defendants Williams or Brown accepted service. However, the Court finds after reviewing the Complaint and record evidence that claims against Williams and Brown fail as a matter of law and that dismissal of the claims without prejudice is appropriate. As to Williams, the Court adopts the same reasons regarding Richardson's claims. The evidence viewed most favorably to Holly demonstrates that received all the process he was due in connection with the

disciplinary hearing, and Williams was not a compromised decision maker simply because he declined to wholly disregard Richardson's testimony.

As to Brown, Holly fails to explain why Brown's affirmance of her initial decision constitutes a denial of due process. Due process under *Wolff* does not compel any particular appeal proceeding following an institutional disciplinary hearing.[4] Further, Brown's written decision notes that she reviewed the proceedings below and found no basis to upset the hearing officer's determination. Accordingly, Holly's due process claim against Brown fails as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, Defendants Williams and Brown are dismissed without prejudice, and Defendant Richardson's dispositive Motion, construed as a Motion for Summary Judgment, is granted. A separate order follows.

    2/7/19                                                          /S/
Date                                                           Paula Xinis
                                                                 United States District Judge

---

[4] The Court notes that the grievance appeal Holly intended for review—sent more than 40 days after he discovered the IGO's correct address—would likely have been time-barred. Code of Maryland Regulations § 12.07.01.05(C) ("If the grievance [to the IGO] is based on an appeal from a disciplinary proceeding, a grievant shall file the grievance within 30 days of the date that the: (1) Grievant received the warden's final response to the appeal; or (2) Warden's response to the appeal was due to the grievant."). The Court further notes that Brown's initial determination could not have been based on reviewing Holly's "letter of concern," (ECF No. 1-2 at 2), because Holly only mailed that letter after he learned the IGO's correct address via Miller's September 13, 2017 letter. Brown's review was of a grievance that she *received* on September 13. Further, Miller stated that he copied his decision to Inmate Affairs – HQ, the more likely source of the grievance that Brown reviewed. *See* ECF No. 1-1 at 12 (Miller's letter stating that he reviewed Holly's case and "the accompanying information you sent with your letter" to the Commissioner); ECF No. 1-2 at 1.